STATE of Oklahoma, ex rel. John P. CRAWFORD, Insurance Commissioner, Plaintiff/Appellee,

v.

INDEMNITY UNDERWRITERS INSURANCE COMPANY, a licensed domestic insurer in the State of Oklahoma, Defendant/Appellee,

v.

Carlton STOKES, Sondra Stokes, and Thomas E. Baker, their attorney, Appellants.

No. 86813.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 3, 1997.

As Corrected July 3, 1997.

L. Richard Howard, Thomas E. Baker, Daniel, Baker & Howard, Tulsa, for Appellants.

## OPINION

BUETTNER, Judge:

¶ 1 Carlton and Sondra Stokes were granted a judgment against Danny J. Truitt (Truitt) for damages which resulted when the bucket of a backhoe swung out onto the highway, hitting the car in which they were traveling. Truitt and his employer had been working in Tulsa removing snow from parking lots. At dusk that evening, Truitt was driving his employer's dump truck, pulling a tandem-axle trailer upon which sat the backhoe. The employer lived near Tahlequah, off of State Highway 51. Truitt was unable to negotiate the employer's driveway because of the ice and snow. The dump truck stalled and blocked part of the eastbound lane of highway 51. The trailer did not have any lights.

¶ 2 Truitt parked his pickup truck in the eastbound lane at least 30 feet behind the dump truck in order to illuminate it for the safety of the driving public. Truitt then began to unload the backhoe. The backhoe's brakes apparently froze, causing its bucket to swing out into the westbound lane, making contact with the Stokes' car, which was proceeding west in the westbound lane. Mr. and Mrs. Stokes sustained personal injuries and their car was totaled.

¶ 3 Truitt's pickup truck was insured by Indemnity Underwriters Insurance Company (Indemnity). Neither the dump truck nor the trailer were insured by Indemnity.

¶ 4 Before judgment was entered in favor of the Stokes against Truitt, he and his lawyer made a record reflecting an agreement reached between the parties. In exchange for not contesting the amount of damages, $12,500.00 plus interest, costs and attorney fees, the Stokes agreed to attempt to recover the judgment from Truitt's insurance company, Indemnity, and not Truitt personally. The Stokes' lawyer, Baker, was later awarded $2,000.00 as attorney fees.

¶ 5 Indemnity went into receivership and the Oklahoma Insurance Commissioner was

Orval E. Jones, General Counsel, James L. Chastain, II, Assistant General Counsel, Oklahoma Insurance Department, Oklahoma City, for Plaintiff/Appellee.

appointed receiver.[1] The Stokes filed a proof of claim, as did their attorney, Baker. The Receiver recommended the claims be denied. The Stokes and Baker filed their objections in the District Court of Oklahoma County. The Receiver filed a response to the objections to which the Stokes and Baker replied. The parties also argued their positions to the court. The District Court agreed with the Receiver's recommendation and denied the claims.

¶ 6 Appellants contend that Truitt's use of the insured pickup truck was sufficient, as a matter of law, to constitute "use" of the vehicle under the terms of the policy. They claim that Truitt's negligence connected with the insured pickup was causally related to the injury. They further maintain that the insurance policy provided coverage for the judgment and that they are entitled to share in the distribution from the receivership estate.[2]

## A. Standard Of Review

¶ 7 We consider proceedings under the Uniform Insurers Liquidation Act to be special proceedings, *State ex rel. Hunt v. Green,* 508 P.2d 639, 642 (Okla.1973), of equitable cognizance. "In cases of equitable cognizance [the appellate court] will examine the record and weigh the evidence, but will not disturb the trial court's judgment unless against the clear weight of the evidence or contrary to law or established principles of equity." *Wetsel v. Johnson,* 468 P.2d 479, 481 (Okla.1970).

¶ 8 The primary issue discussed by the parties is whether the District Court's finding, that the insured pickup truck was not in

"use" so as to expose the insurance company, Indemnity, to liability for coverage, is against the weight of the evidence. Of major importance is the effect to be given the Stokes' judgment in light of 36 Okla.Stat.1991 § 1929(C).[3]

## B. Effect of Previous Judgment

¶ 9 Appellants assert that because they were granted a judgment against Truitt for damages caused by his negligence in operating the insured pickup truck, that the Indemnity policy covers the damages. Indemnity claims that § 1929(C) prevents the judgment from being given conclusive effect by the Receiver and the District Court. The Receiver and District Court agreed and made their decisions to disallow the claims by reviewing the underlying facts.

¶ 10 Indemnity received notice of the Stokes' lawsuit filed in Cherokee County and declined to defend stating that the insured vehicle was not involved in the accident. While the journal entry of judgment reflects that the trial court found that the insured vehicle was directly involved, the transcript reveals that the parties entered an agreed judgment for damages, with the Stokes agreeing they would not attempt to collect the judgment against Truitt personally, but would seek to collect from Indemnity.

¶ 11 In insurance company liquidation proceedings, judgments secured by default or collusion prior to the entry of the liquidation order shall not be "considered as conclusive evidence in the liquidation proceedings, either of the liability of such insured to such person upon such cause of

---

1. The proceedings from this point are governed by the Uniform Insurers Liquidation Act, 36 O.S. 1991 § 1901 et seq.

2. The Stokes assert that Indemnity improperly placed two documents before the court, namely, the accident report and a transcription of Truitt's statement to the insurance agent. The record contains sufficient evidence to support the court's order. The Stokes cannot show that admission of the evidence "resulted in a miscarriage of justice" or constituted "substantial violation of some constitutional or statutory right ..." so as to require reversal of the cause. *Davon Drilling Company v. Ginder,* 467 P.2d 470, 474 (Okla.1970).

3. "No judgment against such an insured taken after the date of entry of the liquidation order shall be considered in the liquidation proceedings as evidence of liability, or of the amount of damages, and no judgment against an insured taken by default or by collusion prior to the entry of the liquidation order shall be considered as conclusive evidence in the liquidation proceedings, either of the liability of such insured to such person upon such cause of action or of the amount of damages to which such person is therein entitled."

action or of the amount of damages to which such person is therein entitled." 36 O.S.1991 § 1929(C). "Collusion" does not necessarily carry a sinister meaning, and may signify an agreed order.[4]

¶ 12 An agreed judgment, with or without fraud, may not properly determine liability or amount of damages where, as here, the injured party agrees to only execute the judgment in proceedings against the insurance company and not the insured. This agreed judgment was not tested by the adversarial process and need not be given conclusive effect in this receivership proceeding.

¶ 13 We ascribe no bad faith or evil motives to the parties obtaining the judgment in this case. We hold that such factors are not necessary in order that § 1929(C) apply.

### C. Coverage Under the Policy

¶ 14 Having concluded that the prior judgment is not entitled to conclusive effect, the next question is whether the District Court's analysis of the underlying facts is against the weight of the evidence. Appellants contend that "causal relationship or connection" is the test to apply, citing *Home Indemnity Company v. Lively*, 353 F.Supp. 1191 (W.D.Okla.1972). In that case, a passenger in an insured car threw a pop bottle at a boy who was waiting at a bus stop. The court found that the passenger, Lively, was "using" the car for the purposes of the insurance policy. The court further stated, "that when insurance policy coverage is under consideration, as opposed to tort liability, the automobile need not be the proximate cause of the accident but the broader requirement of causal relationship or connection is the appropriate test." *Id.* at 1193.

¶ 15 Indemnity, on the other hand, argues that we should apply the "chain of events" test. Except for uninsured/underinsured motorist cases[5], the "chain of events"

test is employed to determine "whether the facts show that an injury arises out of the ownership, maintenance or use of a motor vehicle." *Safeco Insurance Company of America v. Sanders*, 1990 OK 129, 803 P.2d 688, 691. To meet the test, the facts must show that the insured vehicle or any part of it is the "dangerous instrument which starts the chain of events leading to the injury." *Id.* at 692. The *Safeco* court also noted, in keeping with the seminal case, *Farm Bureau Mutual Insurance Co. v. Mouse*, 268 P.2d 886 (Okla.1954), that "chain of events" and "causal connection" are synonymous for the purpose of liability insurance. In *Mouse*, the court stated that "if the cause of the injury was something physically attached to or immediately connected in some manner with the motor vehicle or its operation, the injury was held to be a result of the use of the vehicle." *Id.* at 889. The insured pickup truck, parked about 30 feet from the dump truck with attached trailer hauling the backhoe, illuminating the trailer, is too attenuated, as a matter of fact, to be a cause of the backhoe's bucket swinging out to make contact with the Stokes' car. The pickup truck was used to illuminate a hazard and had no causal connection to the accident. Nor was it in the chain of events leading to the injury. The District Court's disallowance of the claims was not against the weight of the evidence.[6]

¶ 16 The decisions of the Receiver and the District Court are not against the clear weight of the evidence or contrary to law or established principles of equity. For these reasons, we affirm the order of the trial court.

AFFIRMED.

HANSEN, P.J., and ADAMS, C.J., concur.

---

4. b: agreement between parties considered adversaries at the law (as in divorce proceeding) *Webster's Third New International Dictionary,* 1986.

5. 36 O.S.1991 § 3636.

6. The Stokes also argue that after their car was hit by the backhoe bucket, it then hit the insured pickup which was illegally parked on the road behind the dump truck and trailer. However, the Stokes make no allegation that their personal injuries and property damage resulted from that collision. As a result, we need not address their negligence per se argument.