794                      430 Mass. 794 (2000)

Ruggerio Ambulance Service, Inc. *v.* National Grange Mutual Insurance Company.

RUGGERIO AMBULANCE SERVICE, INC. *vs.* NATIONAL GRANGE MUTUAL INSURANCE COMPANY.

Middlesex. January 3, 2000. - February 16, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Insurance,* Insurer's obligation to defend, Construction of policy. *Indemnity. Contract,* Insurance, Construction of contract, Indemnity. *Wrongful Death. Negligence,* Causing death.

Under the provisions of the applicable business automobile insurance policy, an insurer had a duty to defend its insured in a tort action alleging that the decedent died as a result of a delay in response to his request for emergency services because of a motor vehicle accident involving an insured automobile (an ambulance) [795-796]; however, the causal connection between the use of the vehicle and the death of the decedent was too attenuated for coverage under the policy, and the insurer, in the circumstances, had no duty to indemnify [796-799].

CIVIL ACTION commenced in the Superior Court Department on July 30, 1996.

The case was heard by *Elizabeth Butler,* J., on motions for summary judgment, and entry of judgment was ordered by *Herman J. Smith, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John F. Hurley, Jr.,* for the plaintiff.

*David F. Hassett* for the defendant.

ABRAMS, J. Ruggerio Ambulance Service, Inc. (Ruggerio), appeals from a Superior Court decision granting summary judgment to National Grange Mutual Insurance Company (National Grange). On appeal, Ruggerio argues that National Grange had a duty to defend and a duty to indemnify in a wrongful death suit against Ruggerio. We conclude that National Grange had a duty to defend, but that it does not have a duty to indemnify.

1. *Facts.* On February 8, 1992, Thomas M. Williams called emergency services from his home in Hudson, complaining of chest pains. The town of Hudson had a contract

with Ruggerio to provide emergency ambulance service and related emergency medical services. En route to Williams's home, the ambulance was involved in an accident. Shortly thereafter, a second ambulance was dispatched and arrived at Williams's home. Williams had stopped breathing at his home and died while being transported to a hospital.

In February, 1995, the administrator of Williams's estate filed a complaint against Ruggerio, setting forth a wrongful death claim. The complaint alleged that Ruggerio's negligence and consequent delay in responding to the emergency call caused Williams's death.

At the time of the accident, Ruggerio had insurance contracts covering different types of risks, including a comprehensive general liability policy through Western World Insurance Company (Western) and a business automobile policy through National Grange.[1]

In March, 1995, Ruggerio asked National Grange to provide defense and indemnification, but National Grange refused. Through the pendency of the underlying tort action, Ruggerio was provided with a defense through Western. On July 24, 1996, Ruggerio filed a complaint for a declaratory judgment seeking a determination that National Grange, as the insurer providing it with a business automobile policy, owed a duty to defend and indemnify Ruggerio in the underlying tort action brought by the administrator.

Subsequently, Ruggerio filed a motion for summary judgment and National Grange filed a cross motion for summary judgment. The judge issued a memorandum on July 20, 1998, granting summary judgment to National Grange.[2] Ruggerio filed a notice of appeal. We transferred the case on our own motion.

2. *Duty to defend.* Ruggerio argues that an insurer has a duty to defend where the allegations within a complaint possibly may be covered by the policy. Ruggerio contends that, here, "a covered auto was involved in an 'accident' and that the Williams Estate claims that the accident caused . . . Williams'

---

[1]Ruggerio Ambulance Service, Inc., also had a workers' compensation policy with Liberty Mutual Insurance Company and an excess policy in the amount of $3 million with United States Liability Insurance Company. Neither of these policies is at issue here.

[2]After National Grange Mutual Insurance Company (National Grange) was granted summary judgment, Western World Insurance Company settled the underlying tort action.

death by preventing the ambulance from arriving at the scene." Thus, Ruggerio argues, this court should conclude that this claim may be covered by the National Grange policy and that National Grange, therefore, had a duty to defend Ruggerio.

We agree that National Grange had a duty to defend Ruggerio in the underlying action. In Massachusetts, an insurer has a duty to defend an insured when the allegations in a complaint "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms" (citations omitted). *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.*, 412 Mass. 330, 332 (1992). See *Simplex Techs., Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 199 (1999). "It is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify. . . . [T]he duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer." *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989).

Here, the claim in the underlying tort action alleged that the decedent died as a result of a delay in response to his request for emergency services because of a motor vehicle accident involving an insured auto. The policy issued by National Grange provides, in relevant part: "We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto" (emphasis omitted). There was a reasonable possibility that the policy might be construed to cover the underlying claim. National Grange had a duty to defend Ruggerio.[3]

3. *Duty to indemnify.* Ruggerio argues that National Grange has a duty to indemnify where the plaintiff in the underlying case alleges that the decedent died as a result of the ambulance being delayed because of an accident en route to the decedent's home. See *Oakridge Community Ambulance Serv.* v. *United States Fid. & Guar. Co.*, 278 Or. 21 (1977). Ruggerio contends that case law in Massachusetts supports the extension of coverage in "a variety of circumstances involving injuries arising out

---

[3]Although the insurer in this case had a duty to defend, we conclude that, after the date of this opinion, there is no duty to defend, where the plaintiff (or decedent) alleges that the plaintiff's (or the decedent's) injuries arose out of or resulted from delay as a result of a motor vehicle accident and the plaintiff (or his decedent) was not present at the scene of the accident.

of the use of an automobile other than in a collision." See *Travelers Ins. Co.* v. *Aetna Life & Cas. Co.*, 410 Mass. 1002 (1991); *General Acc. Fire & Life Assur. Corp.* v. *Hanley Oil Co.*, 321 Mass. 72 (1947); *Mullen* v. *Hartford Acc. & Indem. Co.*, 287 Mass. 262 (1934). These cases do not support the proposition that any use or operation of a motor vehicle results in coverage under a motor vehicle policy.[4]

"The responsibility of construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). We must determine whether the decedent's death is sufficiently related to the ambulance's accident to mandate coverage by the automobile policy and to trigger National Grange's duty to indemnify. See *Rischitelli* v. *Safety Ins. Co.*, 423 Mass. 703, 706-707 (1996). As an Oregon court noted, "a judgment call must be made as to where along a continuum of causation fall the facts of each case." *Carrigan* v. *State Farm Mut. Auto Ins.*, 140 Or. App. 359, 366 (1996).

The National Grange policy provides, in part: "We will pay all sums the insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto" (emphasis omitted). Section 1 on the Massachusetts Mandatory Endorsement defines "accident" as "an unexpected, unintended event that causes bodily injury arising out of the ownership, maintenance or use, including the loading or unloading of an auto" (emphasis omitted). The issue is whether the decedent's death "arose out of" the ownership, maintenance, or use of an automobile.

"The expression 'arising out of' indicates a wider range of causation than the concept of proximate causation in tort law. . . . However, the expression does not refer to all circumstances in which the injury would not have occurred 'but for' the involvement of a motor vehicle" (citations omitted). *Rischitelli* v. *Safety Ins. Co.*, *supra* at 704. See *Bagley* v. *Monti-*

---

[4]In *Travelers Ins. Co.* v. *Aetna Life & Cas. Co.*, 410 Mass. 1002 (1991), the accident occurred during the "loading" and "unloading" of a van. In *General Acc. Fire & Life Assur. Corp.* v. *Hanley Oil Co.*, 321 Mass. 72 (1947), the accident occurred after oil was misdelivered by a truck, and in *Mullen* v. *Hartford Acc. & Indem. Co.*, 287 Mass. 262 (1934), the plaintiff slipped and fell on oil left by a truck. The injuries in each case were closely related to the ownership, care, operation, or maintenance of a motor vehicle.

*cello Ins. Co., ante* 454, 457 (1999). For an injury to "arise out of" an accident, there must be a sufficiently close relationship between the injury and the accident. See 8 G. Couch, Insurance § 119:30 (3d ed. 1997) ("An injury arises out of the use of a vehicle within the provisions of an automobile insurance policy when a causal connection is reasonably apparent between the use to which the vehicle is being put and the resulting injury"). See also *Roe* v. *Lawn*, 418 Mass. 66, 69 (1994) ("there must be a causal connection between a motor vehicle's use and an injury for the injury to be deemed to have arisen out of the ownership, maintenance, or use of the motor vehicle"); *Liberty Mut. Ins. Co.* v. *Agrippino*, 375 Mass. 108, 115 (1978); *LaPointe* v. *Shelby Mut. Ins. Co.*, 361 Mass. 558, 563-564 (1972).

We do not think that the ambulance accident can be said to be the cause of the decedent's death. The decedent was neither involved in nor present at the accident. "To adopt [Ruggerio's] argument would be tantamount to converting the [National Grange policy] into a general liability policy, contrary to the language of the insurance policy." *Liberty Mut. Ins. Co.* v. *Agrippino, supra* at 114. In short, the relationship between the decedent's death and the accident was too attenuated for coverage under a motor vehicle policy to be extended under the National Grange policy.

Ruggerio notes that, where there is ambiguity in the contract, the ambiguity should be construed against the insurer and in favor of coverage. See *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 277, 285 (1997). Ruggerio also presses the court to weigh the expectations of a reasonable person and argues that a reasonable person would expect this coverage in these circumstances. We do not agree with either of Ruggerio's arguments.

The definition of "accident" is from the Massachusetts mandatory endorsement. "Because this language . . . is controlled by the Commissioner of Insurance, and not any insurer, we do not construe any ambiguity against the insurer." *Goodman* v. *American Cas. Co.*, 419 Mass. 138, 140 (1994), and cases cited.

Ruggerio is correct in its assertion that "we consider 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered' " (citations omitted). *Hakim, supra*. However, we are not persuaded that a reasonable person would assume coverage under a motor vehicle policy in

a case in which the person was neither present at an accident nor received injuries from the accident itself.[5]

4. *Conclusion.* Because an insurer has a broad duty to defend, National Grange should have defended Ruggerio. Despite this duty to defend, National Grange does not have a duty to indemnify. The judgment that National Grange owes no duty to defend is vacated and the judgment that National Grange owes no duty to indemnify is affirmed.

*So ordered.*

---

[5]We note that National Grange also refers to a slightly different definition of "accident" found in the National Grange policy. It states: " 'Accident' includes continuous or repeated exposure to the same conditions resulting in bodily injury or property damage the insured neither expected nor intended" (emphasis omitted). Assuming, without deciding, the applicability of this definition, we reach the same result. The ambulance accident, which did not involve the decedent, could not, therefore, have resulted in the decedent's death.